# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **AMANDA WHITLOCK,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:07-CV-0422-RDP** |
| | } | |
| **DOUBLE OAK MOUNTAIN FAMILY** | } | |
| **DENTISTRY, L.L.C.,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

The court has before it Defendant's Motion for Summary Judgment (Doc. # 24), filed July 3, 2008.  Plaintiff filed her opposition to summary judgment on July 31, 2008. (Docs. # 32 and 33).[1]

Defendant filed its reply on August 11, 2008 (Doc. # 34).  Defendant's motion is now under submission and ripe for ruling by this court.

---

[1]The court notes that Plaintiff's response to Defendant's motion fails to comply with Appendix II to the Uniform Initial Order entered April 3, 2007.  Appendix II contains a notice that "These instructions must be followed explicitly.  Except for good cause shown, briefs and evidentiary materials that do not conform to the following requirements may be stricken."  The court notes that Plaintiff's counsel has practiced in this court long enough to be familiar with the court's standard orders.  Therefore, while the court prefers to rule based upon the merits of the cases before it, in the future, Plaintiff's counsel should not be surprised to have future submissions which fail to comply with the court's orders and standard procedures stricken.

I.      **Facts**[2]

Plaintiff, Amanda Whitlock, began her full-time employment as a dental assistant with

Defendant Double Oak Mountain Family Dentistry ("Double Oak" or "Defendant")   in

approximately May 2005.   Prior to May 2005, Plaintiff worked for Double Oak one day per week.

(Doc. # 33, Ex. 1 at 23-28).   H. Grady Swicord is the sole member of Double Oak.  (Doc. # 29, Ex.

D).

---

[2]The court has conducted a thorough review of the Rule 56 record in this case, including the depositions of the parties.  The court's attention was particularly drawn to the following exchange which took place during Plaintiff's counsel's deposition examination of Defendant's witness, Dr. H. Grady Swicord:

A:      ... That was on a Tuesday, May 16th and – concerning work she didn't do and she said she had done, refused to stay, I think Kim asked her to stay and so she could double-check.  Left. And then Kim called me up explaining about what she had not done and wouldn't stay.  And then I told her I'll – let me talk with her Thursday.  I'll decide what to do about Amanda, that please don't be upset.  And then – *what was your question again*?

Q:      Well back when you worked at two offices, what was your schedule?  When did you work at Family, the office here on downtown Southside, and when did you workout at Shelby County?  What was your schedule?

A:      *I didn't finish answering your other question, though*.

Q:      *Oh, you finished*.

(Doc. # 33, Ex. 2 at 69:1 - 20) (emphasis added).  Although, surprisingly, there was no objection stated on the record, the court finds this exchange to be wholly unprofessional.  Plaintiff's counsel should consider himself warned that if the court becomes aware that he has engaged in any similar conduct – whether through its own examination of materials submitted to it, or upon notice from other counsel or litigants before it – the court will consider sanctions.  Instances of conduct such as this impede the orderly conduct of litigation and also taint not only the lawyer involved (and rightly so), but also other members of the bar (undeservedly so).  The court notes that the Alabama State Bar's website does not list Plaintiff's counsel as having subscribed to Alabama State Bar's Pledge of Professionalism.  The court suggests that Plaintiff's counsel take the Pledge and reexamine this type of misconduct in light of that Pledge.

2

During her employment with Double Oak, Plaintiff denies that she was ever written up for any job deficiencies.   (Doc. # 33, Ex. 1 at 162-63).  However, there was a pediatric dentist who worked with Double Oak for a period of time who requested that Plaintiff not assist her.  Doc. # 26, Ex. A at 80-81; Doc. # 27, Ex. B at 70-71).  Double Oak's clinic manager, Kim Wilson (formerly Brewis) also made complaints about Plaintiff's performance.  (Doc. # 28, Ex. C at 29, 35-38, 43-48, 56-63; Doc. 26, Ex. A at 57, 97).  Wilson felt Plaintiff was lazy and not a team player.  (Doc. # 28, Ex. C at 61-62).  Dr. Swicord testified that he felt that Plaintiff was a marginal employee from the beginning, he had hoped she would grow into the job, but she never did.  (Doc. # 27, Ex. B at 68-69, 73, 75, 92, 122-23).

On or about May 11, 2006, Plaintiff, who was unmarried at the time, informed the staff of Double Oak that she was pregnant.  (Doc. 33, Ex. 1 at 93-94; Doc. 27, Ex. B at 25).

On Tuesday, May 16, 2006, Plaintiff left work early.  (Doc. # 26, Ex. A at 99; Doc. 28, Ex. C at 31, 35, 62).  Tuesdays were the days that a thorough cleaning of the office was performed.  (Doc. # 28, Ex. C at 31).  Wilson felt that Plaintiff had not performed all of her cleaning duties before she left early on May 16.  (Doc. # 28, Ex. C at 62-65).   Wilson made a list of the tasks she felt Plaintiff had left undone when she left early on May 16.  (Doc. # 26, Ex. A at 98-100; Doc. # 28, Ex. C at 64-65).   When Plaintiff returned to work on Thursday, she had some manner of confrontation with Wilson about Wilson's perception that Plaintiff did not complete her tasks before leaving on Tuesday.  (Doc. # 28, Ex. C at 32-33, 58-59, 63-65; Doc. # 26, Ex. A at 98-102; Doc. # 29, Ex. D).  Plaintiff admits that she was upset during this confrontation.  (Doc. # 26, Ex. A at 99 - 101).

After the confrontation with Plaintiff, Wilson contacted Swicord to report her concerns about Plaintiff's conduct on May 16.  She was very upset about Plaintiff's conduct and the confrontation. (Doc. # 27, Ex. B at 68-69).  Wilson told Swicord that she wanted to continue her employment with Double Oak, but that she wanted a new assistant.  (Doc. # 28, Ex. C at 43-45, 68).  As Wilson put it, "[e]ither I was going to leave or [Plaintiff] had to leave."   (Doc. # 28, Ex. C at 68).

After work on May 18, 2006, Swicord telephoned Plaintiff and informed her that her employment with Double Oak was terminated.  (Doc. # 26, Ex.  At 115-17).  Swicord testified that he terminated Plaintiff because she was a marginal worker and because Wilson, the clinic manager, reported that she had experienced a hostile episode with Plaintiff after she had left early without completing her work.    (Doc. # 27 at 68-69, 85-88,117).  Plaintiff asserts that when Swicord informed her of her termination, he told her, "I'm going to have to let you go because of your condition."  (Doc. # 26, Ex. A at 115-16).  Plaintiff further testified that Swicord said something to the effect that she "should find a temporary service that would work with her during her pregnancy because it was going to be a difficult year for her." (Doc. # 26, Ex. A at 115-16).

Although Plaintiff was the first full-time employee of Double Oak to announce her pregnancy, other employees of Dr. Swicord had worked through and after their pregnancies. (Doc. 27, Ex. B at 51-59, 119, 127-30; Doc. 29, Ex. E).  On June 30, 2006, after many months of negotiations, Double Oak was sold pursuant to an Asset Purchase Agreement.  (Doc. 27, Ex. B at 8, 13, 14, 22, 93 103-04).

On or about June 27, 2006, Plaintiff filed a charge of discrimination with the EEOC.  (Doc. # 26, Ex. A at 47-51, Ex. 1 thereto).  On December 7, 2006, the EEOC issued a "no cause" Dismissal

and Notice of Rights to Plaintiff.   (Doc. # 26, Ex. A at 47-51, Ex. 2 thereto).  Plaintiff initiated this

lawsuit on March 5, 2007.  (Doc. # 1).

**II.      Summary Judgment Standard**

Summary judgment is proper only when there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law.  Fed. R .Civ. P. 56(c).  All reasonable doubts

about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick*

*v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving

that the adverse employment decision was made because of intentional discrimination.  *See Reeves*

*v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509

U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th

Cir. 1984).  Although the Supreme Court previously established the basic allocation of burdens and

order of proof in a disparate treatment case,  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert*

*Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no

direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir.

1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving

by a preponderance of evidence a *prima facie* case of discrimination.  Second, once the plaintiff

proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate,

nondiscriminatory reason for its employment decision.  Finally, if the defendant carries its burden,

the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered

by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type,

for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment

action, even though defendant's legitimate reason may also be true or have played some role in the

decision.  *McDonnell Douglas Corp.*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54;  *Desert*

*Palace*, 539 U.S. at 101-02.

III.    **Discussion**

        A.    **This Is Not A Direct Evidence Case.**

Plaintiff's initial argument is that this is a direct evidence case.  The court disagrees.  The

Eleventh Circuit "has marked severe limits for the kind of language to be treated as direct evidence

of discrimination." *Jones v. Bessemer Carraway Medical Ctr.*, 151 F.3d 1321, 1323 n.11 (11th Cir.

1998).  "'Direct evidence' ... is 'evidence, which if believed, proves existence of fact in issue *without*

*inference or presumption*....  Evidence that only suggests discrimination,  ... or that is subject to more

than one interpretation, ... does not constitute direct evidence.'" *Roberts v. Design & Mfg. Services,*

*Inc.*, 167 Fed.Appx. 82, 84-85 (11th Cir. 2006) (quoting *Merritt v. Dillard Paper Co.*, 120 F.3d

1181, 1189 (11th Cir. 1997))(emphasis added). "[O]nly the most blatant remarks, whose intent could

be nothing other than to discriminate ... constitute direct evidence of discrimination." *Carter v.*

*Miami*, 870 F.2d 578, 582 (11th Cir.1989);  *see also Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266

(11th Cir. 1999).

Plaintiff claims that Swicord told her he was terminating her employment because of her

"condition."  Although Swicord disputes that claim, for purposes of summary judgment, the court

must view the facts in the light most favorable to Plaintiff.  Plaintiff asserts that, in these
circumstances, "condition" can mean only one thing.  However, to draw the conclusion that
"condition" means "pregnancy" requires an inference or a presumption. Although certainly that may
indeed be a proper inference for a jury to draw, and the comment is certainly probative of Swicord's
intent, the fact remains that the *inference* must be drawn for the comment to establish discriminatory
intent (*i.e.*, that the condition referred to was pregnancy).  Therefore, under applicable law, Swicord's
statement does not constitute direct evidence of pregnancy discrimination.

> **B.**      ***McDonnell Douglas* Burden Shifting Analysis.**

Plaintiff argues that even if she does not have direct evidence of discrimination, she can
establish a *prima facie* case of discrimination with regard to her termination.  Plaintiff claims that
she has satisfied this burden by showing that she was in a protected class (pregnant), she was
discharged and qualified, and that after her discharge, the position was filled by a person outside the
protected class. (Doc. # 32 at 13).  Without analysis or discussion of supporting testimony from the
record, Plaintiff simply asserts that she has made out the *prima facie* case. (*Id.*)  The court is not
satisfied that Plaintiff established that her position was filled.  Swicord's testimony was that the
position was not filled because the practice was being sold within the month. (Doc. #33, Ex. 2 at
125).  Plaintiff has failed to cite any evidence showing she was replaced. (Doc. # 32 at 13).
Therefore, she has failed to establish a *prima facie* case under this model.

That Rule 56 finding does not end the inquiry, however, because there are alternative methods[3] of establishing a *prima facie* case that may be employed here, but which inexplicably were not addressed by either party.[4]

### C.  Other Methods of Establishing A *Prima Facie* Case.

"[T]he *McDonnell Douglas* burden-shifting framework remains only one method by which the plaintiff can prove discrimination by circumstantial evidence. *McDonnell Douglas* is not the exclusive means of proof." *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 768 n.3 (11th Cir. 2005) (citing *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir. 1982)). The requirements of a *prima facie* case are not to be applied rigidly or inflexibly. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir. 1999). A *prima facie* case of discrimination may also be proved by any "other [circumstantial] evidence" from which a discriminatory animus may be inferred. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). "In cases where the evidence

---

[3]The court notes that Plaintiff could also establish a *prima facie* case of pregnancy discrimination regarding her termination by showing that she: (1) belongs to a protected category; (2) suffered an adverse employment action; (3) was treated less favorably than other similarly situated employees outside of her protected class; and (4) was qualified for the position. *See, e.g., Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997) (outlining *prima facie* elements for race discrimination claim). Possibly Plaintiff did not pursue this line of proof because the record is devoid of any appropriate comparator evidence.

Swicord testified that he terminated Plaintiff because she was a marginal employee and because his clinic manager complained to him that she had some manner of confrontation with Plaintiff about her perception that Plaintiff did not complete her tasks before leaving work early one day. To establish a *prima facie* case under this alternative, "work rule" method, Plaintiff would have to present evidence that other employees engaged in similar misconduct and were not terminated. Plaintiff has not even attempted to do so. Therefore, the court concludes that Plaintiff has failed to establish a prima case of pregnancy discrimination under either of the traditional *McDonnell Douglas* burden shifting frameworks.

[4]Defendant simply argues that Plaintiff failed to establish a *prima facie* case, but provides little or no analysis and proceeds to focus its argument on its legitimate, non-discriminatory reasons for Plaintiff's termination. (Doc. # 25 at 14; Doc. # 34 at 10).

does not fit neatly into the classic *prima facie* case formula, for example, we have stated that [a] *prima facie* case of disparate treatment can be established by any proof of actions taken by the employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Schoenfeld*, 168 F.3d at 1268 (quoting *Hill v. Metropolitan Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1540 (11th Cir.1988) (in turn quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 576 (1978))(internal quotation marks omitted).

Although Swicord's alleged statement to Plaintiff – that he was terminating her employment because of her "condition" – does not comprise direct evidence (as that term has been defined by the Eleventh Circuit), there is no question that comment, together with the timing of Plaintiff's termination, is circumstantial evidence regarding Swicord's intent which, if believed by a jury, could support a verdict for Plaintiff.  That is, the evidence presented by Plaintiff is sufficient circumstantial evidence to support a *prima facie* case of pregnancy discrimination in the termination of her employment.

> **D.      Defendant's Legitimate, Non-Discriminatory Reasons for Plaintiff's Termination.**

Defendant denies that Swicord made the statement alleged by Plaintiff, *i.e.*, that her employment was terminated because of her pregnancy.  Defendant asserts that Plaintiff's employment was terminated for legitimate, non-discriminatory reasons. Defendant's articulated reasons for Plaintiff's termination are that Plaintiff was a marginal employee and that Defendant's clinic manager, Wilson, reported to Swicord that she had some manner of hostile confrontation with Plaintiff because Plaintiff left work early one day without completing certain cleaning duties.

**E.      Plaintiff Has Created A Genuine Issue of Fact with Regard to Pretext.**

If an employer "articulates one or more [legitimate, non-discriminatory] reasons, the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence . . . sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997) (citations omitted)). A plaintiff may not recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet the reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason. *Hammock v. Nexcel Synthetics, Inc.*, 201 F. Supp. 2d 1180, 1187 (N.D. Ala. 2002) (quoting *Chapman*, 229 F.3d at 1029 (citing *Alexander v. Fulton County*, 207 F.3d 1303, 1341 (11th Cir. 2000); *Combs*, 106 F.3d at 1541-43)). "It is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not [discriminatory]." *Alexander*, 207 F.3d at 1341; *see also Combs*, 106 F.3d at 1541-43.

A plaintiff may establish pretext in at least two ways: by showing that (1) "a discriminatory reason more likely motivated" her termination or (2) "the employer's proffered reason is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). In her attempt to establish that the reasons proffered by the Defendant for her termination  are unworthy of credence, Plaintiff argues that she performed all her cleaning duties except taking out the garbage. She claims she didn't do that because her doctor advised her not to lift anything weighing more than 20 pounds. However, where the decision maker (*i.e.*, Swicord) does not have personal knowledge

of the conduct at issue, but rather relies on second-hand information (in this case, from Wilson), "an employee cannot demonstrate pretext merely by showing that the work rule violation did not occur . . .." *Sweeney v. Alabama Alcoholic Beverage Control Bd.*, 117 F.Supp.2d 1266, 1272-73 (M.D. Ala. 2000) (citing *Strickland v. Prime Care of Dothan*, 108 F.Supp.2d 1329, 1334 (M.D. Ala. 2000) (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466 (11th Cir. 1991))).  "An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999). "In other words, whether or not a plaintiff actually committed the work rule violations is immaterial on the issue of pretext. Rather, what is material is whether or not the employer believed the allegations to be true, not whether they were in fact true."  *Sweeney*, 117 F.Supp.2d at 1273 (citing *Elrod*, 939 F.2d at 1470).  The court need not address whether Plaintiff can establish pretext via this avenue because she can create a material issue of fact another way.

Pretext can also be shown if Plaintiff can present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas Corp.*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54;  *Desert Palace*, 539 U.S. at 101-02.   Plaintiff has testified that Swicord told her that her employment was terminated because of her "condition."  This testimony, taken together with the timing of the termination and her assertion that she did not fail to complete her tasks, is sufficient for a reasonable factfinder to conclude that Plaintiff's pregnancy was a motivating factor in the decision to terminate her employment.  If the jury concludes this statement was made, it could also find that it was made by the decision maker about the decision at issue, while informing Plaintiff of the decision.  Thus,

Plaintiff's testimony that the statement was made to her has created a genuine issue of fact with regard to whether the articulated reasons for the termination of her employment were a pretext for pregnancy discrimination.

## IV.     Conclusion

For the reasons stated above, Defendant's motion for summary judgment is due to be denied. The court will enter a separate order denying the motion.

**DONE** and **ORDERED** this _____10th_____ day of February, 2009.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE